IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SCOTT CRANE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00013 |
| | § | |
| RAVE RESTAURANT GROUP, INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT RAVE RESTAURANT GROUP INC.'S MOTION TO DISMISS WITH SUPPORTING BRIEF

W. Gary Fowler
Texas State Bar No. 07329250
Scott M. McElhaney
Texas State Bar No. 00784555
**JACKSON WALKER L.L.P.**
2323 Ross Avenue, Ste. 600
Dallas, Texas 75201
(214) 953-6000 (office)
(214) 953-5822 (facsimile)
gfowler@jw.com
smcelhaney@jw.com

**ATTORNEYS FOR DEFENDANT
RAVE RESTAURANT GROUP, INC.**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...............................................................................................1

II.    FACTUAL BACKGROUND ............................................................................1

III.   ARGUMENT AND AUTHORITY ...................................................................2

       A.     Standard of Review. ...........................................................................2

       B.     Crane's Contractual Claims Related to Rave Stock Fail to State a Claim
              for Relief. ............................................................................................3

              1.     Crane's Alleged Contractual Right to Restricted Stock Units. ...................3

                     a.     The January 6, 2017, Rave-Crane Employment Agreement. ..........3

                     b.     The Restricted Stock Unit Award Agreement for October
                            2019 Vesting. ...............................................................4

                     c.     Crane's Claimed Rights to Additional Rave Stock in the
                            Future. ........................................................................5

              2.     Crane's Breach of Contract Allegations Fail to State a Claim for
                     Relief. ...........................................................................6

                     a.     Any Contractual Entitlement to Unvested Stock Has Been
                            Forfeited. ....................................................................6

                     b.     Case Law Confirms That Any Right to Rave Stock Has
                            Been Forfeited. .............................................................6

                     c.     Parties Agreed to What Would Happen Upon Termination. ...........8

                     d.     Crane's Argument That Rave Made it Impossible to Satisfy
                            the Condition of Being Employed at the Vesting Date is
                            Misplaced. ...................................................................8

                     e.     The Court Should Dismiss the Contract and Declaratory
                            Relief Causes of Action Related to Crane's Claim for Rave
                            Stock. ........................................................................9

       C.     The Contract Claim for Failure to Pay a Bonus Similarly Fails to State a
              Claim. ...............................................................................................10

       D.     Crane's Contract Claim for Unpaid Vacation Should be Dismissed. ...................11

i

E.     The Complaint Does Not State a Claim for Severance Pay or COBRA Premiums. ........................................................................................12

F.     Crane's Common Law Fraudulent Inducement Claim Should Be Dismissed. ................................................................................................13

     1.     The Complaint Does Not Adequately Allege Fraudulent Intent. ..............13

     2.     Crane Fails to Adequately Allege Justifiable Reliance..............................15

G.     The Statutory Fraud Claim Also Fails to State a Claim For Relief. ......................15

IV.     CONCLUSION ............................................................................................................15

# INDEX OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Durant*,
    550 S.W.3d 605 (Tex. 2018) ..........................................................................13, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................2

*Authier v. Automated Logic Consult. Servs.*,
    No. 5:14-cv-993, 2016 U.S. Dist. LEXIS 98513 (W.D. Tex. July 28, 2016) ...........7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................2

*Camacho v. Tex. Workforce Comm'n*,
    445 F.3d 407 (5th Cir. 2006) ............................................................................10

*City of Clinton v. Pilgrim's Pride Corp.*,
    632 F.3d 148 (5th Cir. 2010) ............................................................................14

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ..............................................................................3

*Epps v. Fowler*,
    351 S.W.3d 862 (Tex. 2011) ...............................................................................6

*Ginn v. NCI Bldg. Sys., Inc.*,
    472 S.W.3d 802 (Tex. App.—Houston [1st Dist.] 2015, no pet.) .........................15

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
    892 F.3d 719 (5th Cir. 2018) ..............................................................................3

*Lewis v. Vitol, S.A.*,
    No. 01-05-00367-CV, 2006 Tex. App. LEXIS 5645 (Tex. App.—Houston [1st
    Dist.] 2006, no pet.) (mem. op.) ........................................................................11

*Nichols v. Enterasys Networks, Inc.*,
    495 F.3d 185 (5th Cir. 2007) ............................................................................10

*Oldham v. ORIX Fin. Servs.*,
    No. 3:05-cv-2361, 2007 U.S. Dist. LEXIS 11855 (N.D. Tex. Feb. 21, 2007) ...........10, 11, 12

*Sellers v. Minerals Techs., Inc.*,
    753 Fed. Appx. 272 (5th Cir. 2018) ..................................................................8, 9

*Shakeri v. ADT Sec. Servs.*,
    816 F.3d 283 (5th Cir. 2016) ................................................................15

*Skelton v. Mobile Sys. Int'l, Inc.*,
    No. 3:98-cv-1254, 2000 U.S. Dist. LEXIS 4725 (N.D. Tex. Apr. 14, 2000) ........................7, 9

*Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*,
    184 S.W.3d 840 (Tex. App.—Austin 2006, pet. dism'd by agr.) ...........................15

*Wilson v. Noble Drilling Servs., Inc.*
    405 Fed. Appx. 909 (5th Cir. 2010) ........................................................7

**Statutes and Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................2

Fed. R. Civ. P. 9(b) ...................................................................13

Texas Bus. & Comm. Code § 27.01 .................................................15

## I.    INTRODUCTION

Plaintiff Scott Crane complains that, after his termination as Chief Executive Officer of Defendant Rave Restaurant Group, Inc. ("Rave"), the company wrongfully deprived him of Rave stock and refused to pay him certain amounts. Although the Complaint is overwrought, one-sided, and inaccurate in many respects, the company does not respond to Crane's allegations here because there is no need. Even taking the factual allegations of the Complaint as true, a review of those contentions through the purely legal lens that applies to this Motion shows that, under settled law, Crane fails to state a claim for relief. The Complaint should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

The Complaint states that Rave recruited Crane to become its CEO, offering "a salary with potential bonuses, as well as shares in Rave based on certain performance metrics." *See* Compl. ¶¶ 13 & 15 [ECF 1]. As discussed below, he then entered into a written employment agreement on January 6, 2017. Crane started as Rave's CEO on or about January 9, 2017. *Id.* at ¶ 19. He was discharged from his position in July of 2019, and he notes that Rave did not invoke the termination for cause provisions of his employment agreement in connection with his firing. *Id.* at ¶ 31.

Crane then says Rave (a) failed to transfer certain shares of Rave stock to which he is purportedly entitled (and will fail to transfer other shares of Rave stock when that stock is supposed to be transferred) and (b) refused to pay him certain other amounts that should have been paid. The specific items Crane describes are as follows:

- First, the Complaint alleges Rave has refused and will refuse to deliver Rave stock.

  - Crane first maintains that, although he "met[] and/or exceed[ed] the benchmarks set by Rave's board of directors, according to Crane's contract with Rave" for an initial financial performance evaluation period, *id.* at ¶ 30, Rave "fail[ed] to transfer 328,000 shares in Rave to Crane on or about October 15, 2019," as Rave should have. *Id.* at ¶¶ 25-27 & 44.

● He also contends he "met the benchmarks" for two later financial performance evaluation periods, allegedly entitling him to have additional shares in Rave transferred to him in October of 2020 and October of 2021. *Id.* at ¶¶ 28-29.

● Second, the Complaint asserts that Rave has "refused to pay Crane the bonus he is entitled to for reaching the benchmarks for the 2018 Fiscal Year (ending June 2019)." *Id.* at ¶ 37.

● Third, Crane claims he is entitled to "unpaid vacation." *Id.*

● Fourth, Crane says Rave owes "$300,000 in severance pursuant to [his] employment contract because he was not terminated with cause, and COBRA premium payments." *Id.*

Crane's multiple references to his "employment contract" with Rave show that his alleged contractual entitlement to each of the items noted above stems from that document. The contract to which Crane refers is an agreement dated January 6, 2017. *See* Tab A. The terms of that contract and other related documents are discussed below. It is sufficient to note here that Crane's supposed entitlement to each of the items he seeks is addressed in the January 6, 2017, agreement.

## III.     ARGUMENT AND AUTHORITY

### A.     Standard of Review.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, which must give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court should grant a Rule 12(b)(6) motion if a complaint lacks "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This Motion is based on the allegations in the Complaint, the Rave-Crane employment agreement, and documents referred to in that agreement. Although it is sometimes said that a Rule

12(b)(6) motion is limited to a review of the pleadings, analysis of the documents attached to this Motion is proper because, for purposes of Rule 12(b)(6), the "pleadings" include documents that are "referred to in the plaintiff's complaint and are central to [his] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000). The attached documents are referred to in the Complaint and are central to Crane's claims.

**B. Crane's Contractual Claims Related to Rave Stock Fail to State a Claim for Relief.**

Crane first asserts a breach of contract claim arising from his alleged entitlement to 328,000 shares of Rave stock not delivered on or about October 15, 2019. *See* Compl. ¶ 44. He makes a similar claim for declaratory relief relating to his alleged entitlement to additional shares of Rave stock in October of 2020 and 2021. *See id.* at ¶¶ 28-29 & 64-66. The latter claim is premised on the same issues as the breach of contract claim. *Id.* The claims can thus be examined together.

Under Texas law, "[t]he essential elements of a breach of contract claim are the existence of a valid contract, performance or tender of performance by the plaintiff, breach of the contract by the defendant, and damages sustained as a result of the breach." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 731 (5th Cir. 2018). Crane has not and cannot allege *breach* by Rave of any contractual obligation related to his supposed entitlement to Rave stock because his alleged rights were unvested and were forfeited upon his termination.

**1. Crane's Alleged Contractual Right to Restricted Stock Units.**

**a. The January 6, 2017, Rave-Crane Employment Agreement.**

The January 6, 2017, Rave-Crane employment agreement addressed Rave Restricted Stock Unit awards in a "**Long Term Incentive Compensation**" paragraph. It states:

> As additional consideration for the duties and responsibilities to be performed, you will be eligible to participate in the Long Term Incentive Plan (the "LTIP"), which currently consist of Restricted Stock Unit (RSU) awards with 3-year performance and time vesting criteria, as determined by the Company's Compensation Committee each year. Upon your start date with the Company, you will be granted 300,000 Restricted Stock Units. The terms and conditions associated with the RSUs are detailed in a separate Restricted Stock Unit Award Agreement.

> You shall be eligible for additional LTIP awards following each full fiscal year that you are employed by the Company, subject to approval of the Compensation Committee.

*See* Tab A, pp. 2-3.

### b. The Restricted Stock Unit Award Agreement for October 2019 Vesting.

Under the January 6, 2017, employment agreement provision relating to a grant of 300,000 Restricted Stock Units on his start date, Crane and Rave executed a "Restricted Stock Unit Award Agreement" dated January 12, 2017. *See* Tab B. That RSU Award Agreement set out the terms and conditions of the grant of units in Rave stock set to vest on October 15, 2019. That Agreement explained that it was "granted pursuant to and subject to all of the terms and conditions of" a "2015 Long Term Incentive Plan" ("2015 LTIP"). *Id.*, p. 1. The 2015 LTIP is also attached. *See* Tab C.

The RSU Award Agreement for October 2019 vesting (a) granted Crane 300,000 restricted stock units (each "unit" representing a future "right to receive one share" of Rave common stock), but (b) noted that "attached Terms and Conditions comprise an integral part of" the Agreement and that "the Units granted hereby are subject to such Terms and Conditions." *See* Tab B, pp. 1-2.

That RSU Award Agreement's Terms and Conditions first set out "Grant of Restricted Stock Units" terms and noted that the grant was "subject to satisfaction of the vesting schedule, performance criteria and other conditions set forth herein." *Id.*, p. 2 (Agreement § 1).

The "Vesting" provision said the units would "become fully vested and nonforfeitable if" (a) Crane "remain[ed] continuously employed" by Rave through the "Vesting Date" (defined to be October 15, 2019), and (b) the "number of Units to be vested" under "performance criteria" set out in the Agreement was greater than zero (in other words, certain financial performance targets were met). *Id.*, p. 2 (Agreement § 2). The shares would then be "delivered." *Id.* (Agreement § 4).

More significantly for the purposes of this Motion, though, another term of the October 2019 Vesting RSU Award Agreement explained when there would be a "Forfeiture of Units." *Id.*, p. 3 (Agreement § 5). That provision explained that Rave and Crane expressly agreed as follows:

All unvested Units will be forfeited in the event the Participant ceases to be an employee of the Company before the Vesting Date ***for any reason*** other than [a qualified retirement, death or permanent disability, or a contrary determination of the Rave Board of Directors Compensation Committee].

*Id.* (emphasis added). Another section of the October 2019 Vesting RSU Award Agreement further confirmed that the Agreement did not "confer upon [Crane] any right to remain in the employ of" Rave. *Id.*, p. 4 (Agreement § 10).

The forfeiture of unvested units is consistent with—and mandated by—the 2015 LTIP. It required "immediate forfeit[ure of] all unvested restricted stock units" if a grantee ceased to be an employee "for any reason," with the exceptions noted above. *See* Tab C, p. 12 (2015 LTIP § 14(c)).

As explained below, the term requiring the "forfeit[ure]" of "unvested" units if Crane "cease[d] to be an employee" of Rave "***for any reason***" applies in this case. As of July 2019, Crane's grant of restricted stock units had not vested, since it was before October 15, 2019. Thus, "[a]ll unvested Units" granted to Crane were "forfeited" because (a) Crane does not allege he ceased to be an employee because of a qualified retirement, death, or permanent disability and (b) there is no claim that there was a determination of the Rave Board of Directors Compensation Committee to waive the forfeiture.

### c. Crane's Claimed Rights to Additional Rave Stock in the Future.

Crane also seeks declaratory relief about his alleged rights to Rave shares in October of 2020 and 2021. *See* Compl. ¶¶ 28-29 & 65-66. But even if restricted stock units had initially been granted for such periods, Crane's supposed contractual entitlement to such units stems from the "3-year . . . time vesting" awards noted in his employment agreement and ultimately the 2015 LTIP. The 2015 LTIP, however, contains the forfeiture of unvested units clause set out above. As will be explained, Crane's July 2019 termination before the October 2020 and 2021 vesting dates shows that the forfeiture of unvested units clause applies here too.

## 2. Crane's Breach of Contract Allegations Fail to State a Claim for Relief.

Crane has not pleaded a cognizable claim that Rave has breached or will breach a contractual obligation related to his alleged present or future entitlement to Rave stock.

### a. Any Contractual Entitlement to Unvested Stock Has Been Forfeited.

As the language of the 2015 LTIP requires and the October 2019 Vesting RSU Award Agreement explains, any contractual entitlement to unvested Rave stock to which Crane might have become entitled in October 2019 was forfeited when his employment with Rave ended in July 2019. Given the terms of § 14(c) of the 2015 LTIP, the same conclusion applies to Crane's alleged entitlement to Rave stock on vesting dates in 2020 and 2021. The required "forfeit[ure]" of "unvested" units if Crane "cease[d] to be an employee" of Rave "for any reason" (with exceptions irrelevant here) applies. *See* Tab C, p. 12. As of the July 2019 termination of his employment, none of Crane's restricted stock unit grants under *any* alleged RSU Agreement had vested. All unvested units granted were "forfeited" because he "cease[d] to be an employee" of Rave, and there is no claim that his termination was for a reason that exempts him from forfeiture.

A court's "primary concern" when it construes a contract "is to ascertain the parties' true intent as expressed in the contract." *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). The intention of the parties as set out in any contract for the delivery of Rave stock is plain. The Court should enforce that intention and hold that Crane has not pleaded a cognizable breach of contract claim or declaratory relief claim that Rave has or will breach an obligation to deliver Rave stock.

### b. Case Law Confirms That Any Right to Rave Stock Has Been Forfeited.

As explained above, the intent of the parties here was that Crane would "forfeit" all unvested Rave restricted stock units if he "cease[d] to be an employee" of Rave "for any reason" (with exceptions not applicable here) before the vesting date of any restricted stock unit award that had been granted. Courts regularly enforce similar terms of analogous agreements.

For example, the Fifth Circuit enforced an express requirement that a worker be employed on a certain date to receive a bonus in *Wilson v. Noble Drilling Servs., Inc.* 405 Fed. Appx. 909, 915 (5th Cir. 2010). Distinguishing a Texas state case that had awarded a pro rata share of a bonus to an employee who had been discharged just before the bonus distribution date where a continued employment requirement was "not agreed upon by the parties or committed to writing," *id.*, the *Wilson* court held that, because the written agreement in that case "expressly state[d] that [the plaintiff was] entitled to the STIP bonus only if he [was] employed on the date that the STIP bonus [was] distributed," the agreement had to be enforced and the plaintiff's claim failed. *Id.*

Even more on point, courts have enforced terms in bonus and stock option plans that require forfeiture of the benefit if the employee ceases to be an employee "for any reason" before a specified date. For example, in *Authier v. Automated Logic Consult. Servs.*, No. 5:14-cv-993, 2016 U.S. Dist. LEXIS 98513 (W.D. Tex. July 28, 2016), the court addressed language in a bonus plan which stated that an employee whose "employment is terminated for any reason . . . prior to receiving an incentive award" would "forfeit . . . any right to receive the incentive award." The court said that that language meant that an employee's breach of contract claim for a bonus failed as a matter of law when his employment ended before that date. *Id.* at *19-21. Similarly, Judge Lynn of the Northern District of Texas concluded that language in an employee stock option plan that provided for termination of the option if the plaintiff ceased to be employed by the defendant "for any reason" meant that the plaintiff had no claim related to unvested options where she was discharged without cause before the vesting date set out in the plan. The termination "for any reason" qualification left "no doubt as to [the employer/defendant's] intentions." *Skelton v. Mobile Sys. Int'l, Inc.*, No. 3:98-cv-1254, 2000 U.S. Dist. LEXIS 4725, *24 (N.D. Tex. Apr. 14, 2000).

The analysis here is the same. Crane fails to plead a claim that Rave has or will breach an obligation to deliver Rave stock, because Crane's unvested right to stock has been forfeited.

### c.  Parties Agreed to What Would Happen Upon Termination.

The discussion set out above is sufficient to show that Crane's contract-based claims for Rave stock should be dismissed. But in addition, Crane's pleading further shows that his claim for Rave stock fails because the parties expressly agreed to what would be available to Crane if he were to be discharged or cease to be employed under various circumstances. As discussed below, the "**Termination of Employment**" portion of the parties' employment agreement addressed what would be available to Crane if he was (as he alleges) discharged without cause during the three-year term of that employment agreement. The fact that Rave and Crane addressed benefits available to him upon his termination before any vesting date for Rave stock further shows that there is no reason to ignore the plain requirement for forfeiture of any unvested restricted stock units upon Crane's termination of employment "for any reason."

### d.  Crane's Argument That Rave Made it Impossible to Satisfy the Condition of Being Employed at the Vesting Date is Misplaced.

Crane argues that he is entitled to Rave stock because (a) by discharging him in July of 2019, Rave made it impossible to satisfy the condition precedent to the vesting of his rights to Rave stock that he be employed on the vesting date and (b) he should thus be excused from having to fulfill that condition, just as the plaintiff was excused from having to be employed on a given date in *Sellers v. Minerals Techs., Inc.*, 753 Fed. Appx. 272 (5th Cir. 2018). That argument fails.

Crane's contention focuses on the paragraph 2 "<u>Vesting</u>" provision of the RSU Award Agreement's Terms and Conditions, which states that the awarded restricted stock units would "become fully vested and nonforfeitable if" Crane "remain[ed] continuously employed" by Rave through the "Vesting Date" and other conditions were met. *See* Tab B, p. 2 (Agreement § 2).

However, the proper analysis noted above focuses on the separate—and expressly set out—term in the paragraph 5 "<u>Forfeiture of Units</u>" provision (and corresponding term in the 2015 LTIP),

which requires "forfeit[ure]" of "unvested" units if Crane "ceases to be an employee" of Rave "for any reason" with exceptions inapplicable here. *See id.*, p. 3 (Agreement § 5). Given the express terms of that separate forfeiture provision, this Court should enforce it, just as other courts have.

A cursory reading of *Sellers* confirms this conclusion. In that case, a plaintiff claimed he was owed a long-term-incentive payment after he was discharged without cause before the January 18, 2015, date on which he had to be employed in order to be entitled to the payment. *Sellers*, 753 Fed. Appx. at 273-76. The Circuit first said that being employed on January 18 was a condition precedent to entitlement to the payment, but that the condition *had* been met because the plaintiff was still "technically" employed then. *Id.* at 278. The court went on to discuss (in dicta) the analysis *if* the plaintiff's employment had ended before January 18. One section of the incentive plan (3(c)) said that he would "not be eligible" for the payment if he resigned or was terminated *for* cause (or only eligible for a partial payment if his employment ended for death or disability). Another section (11(d)) addressed termination *without* cause, but it did *not* set out a similar non-eligibility/forfeiture provision. The court said that, *if* the plaintiff's termination without cause occurred before January 18, that could have excused him from having to meet the being-employed condition for payment. But the key aspect of *Sellers* is that the clear forfeiture provision for termination *with* cause did not apply to a termination *without* cause.

Simply put, the *Sellers* plaintiff was terminated *without* cause, and no express forfeiture provision applied. In stark contrast, an express forfeiture provision applies in this case. That provision requires that the Court hold that Crane's contract-based claims for Rave stock fail.

### e. The Court Should Dismiss the Contract and Declaratory Relief Causes of Action Related to Crane's Claim for Rave Stock.

Crane's breach of contract claim arising from his alleged entitlement to 328,000 shares of Rave stock as of October 15, 2019, should be dismissed. There was no breach of contract because

his unvested right to Rave stock was forfeited. The Court should dismiss Crane's declaratory relief claim relating to any future entitlement to additional shares of Rave stock for the same reasons.[1]

## C.  The Contract Claim for Failure to Pay a Bonus Similarly Fails to State a Claim.

The January 6, 2017, Rave-Crane employment agreement also addresses Crane's claim for a bonus "for reaching the benchmarks for the 2018 Fiscal Year (ending June 2019)." *See* Compl.

¶ 37. The "**Annual Incentive Compensation**" paragraph of the January 6, 2017, agreement states:

> In addition to your Base Annual Salary, you shall be eligible to participate in the Company's executive bonus plan . . . . The amount of bonus earned each year is subject to the approval of the Board of Directors, which may use its discretion to interpret the Company's achievement of the bonus targets . . . . Bonuses are typically not paid until the Company's financial audit is complete, and executives must remain employed by the Company until the bonus payment date to receive a bonus . . . .

*See* Tab A, p. 2. This language precludes Crane's claim for a bonus payment.

*__First__*, the language of the bonus provision of the Rave-Crane employment agreement did not give Crane any contractual right to a bonus. He was only "eligible" to receive a bonus, the amount of any bonus was "subject to the approval" of Rave's board, and the board had "discretion" in the award of any bonus. *Id.* Courts recognize that such language creates no contractual rights.

For example, in *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185 (5th Cir. 2007), the Circuit (applying Texas law) recognized that, where a contract "include[s] the very terms giving [an employer] discretion to adjust" amounts to be paid to an employee, *id.* at 189, there is no basis for a breach of contract claim. Similarly, in *Oldham v. ORIX Fin. Servs.*, No. 3:05-cv-2361, 2007 U.S. Dist. LEXIS 11855 (N.D. Tex. Feb. 21, 2007), the court explained that "certain disclamatory provisions render [incentive pay] schemes merely aspirational incentives, not enforceable contracts which codify obligations." *Id.* at *6-7. The "disclamatory provisions" cited in *Oldham*

---

[1]  Crane's claim for declaratory relief should also be dismissed to the extent it is based on Chapter 37 of the Texas Civil Practice and Remedies Code. Crane erroneously relies on that state law, *see* Compl. ¶¶ 64-65, because it is a procedural, not a substantive, provision of Texas law and thus does not apply in federal court. *See Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006).

included language that an incentive pay committee was "solely responsible for, and has final decision authority regarding all aspects of the Plan, including . . . interpreting the plan . . . and adjusting individual payouts." Crane's employment agreement similarly provides that Crane was only "eligible" to receive a bonus, "subject to the approval" of Rave's board, which had "discretion" in the award. That language has the same legal effect.

Texas courts have reached the same conclusion. In *Lewis v. Vitol, S.A.*, No. 01-05-00367-CV, 2006 Tex. App. LEXIS 5645 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (mem. op.), a Texas court found that a plaintiff had no breach of contract claim against his employer for a bonus where the relevant agreement said the plaintiff was only "eligible" for a bonus, "indicating that [the plaintiff was] not guaranteed a bonus, but [was] qualified, or eligible, to be considered for a bonus." *Id.* at *12. In those circumstances, any "bonus was purely discretionary[, and the plaintiff] was not contractually entitled to it." *Id.* at *13. Crane was also only "eligible" to receive a bonus. The *Lewis* court's analysis and result apply here. Crane's claim for a bonus should be dismissed.

**_Second_**, Crane also does not allege he satisfied conditions to the receipt of the bonus he seeks. Any Rave bonus is "typically not paid until the Company's financial audit is complete" and one "must remain employed" to receive it. *See* Tab A, p. 2. Crane does not claim that the audit of the fiscal year ending June 2019 was complete before his July 2019 discharge. Likewise, he does not and cannot allege that he was employed on the bonus payment date. Crane thus does not have a contractual right to the bonus he seeks. *See Oldham*, 2007 U.S. Dist. LEXIS 11855 at *9 (finding that language providing that "'[n]o rights in the Plan shall be deemed to accrue to any person . . . until such date the payment is made'" precluded formation of a contract for an incentive payment).

## D. Crane's Contract Claim for Unpaid Vacation Should be Dismissed.

The Rave-Crane employment agreement likewise addresses Crane's claim that he is entitled to "unpaid vacation." *See* Compl. ¶ 37. The "**Employee Benefits**" paragraph states:

> During the Initial Term and any Extended Term while you are employed by the Company, you will be entitled to receive the same benefits as the Company makes generally available from time to time to the Company's senior executives, as those benefits may be modified, reduced or eliminated from time to time. Vacation . . . will be available to you as set forth in the Company's standard benefit package and *Employee Handbook.* Such rights, programs and benefit plans may be revised from time to time at the Company's sole discretion.

*See* Tab A, p. 5.

Again, this text creates no contractual right to "unpaid vacation." Rave's right to "modif[y], reduce[] or eliminate[]" benefits or "revise[]" them at its "sole discretion" shows that there is no enforceable contractual obligation to paid vacation. *Oldham*, 2007 U.S. Dist. LEXIS 11855 at *6-7 (explaining that there is no contractual obligation where a writing made all terms modifiable at the discretion of the employer) (citations omitted). Crane has no contractual entitlement to "unpaid vacation."

### E. The Complaint Does Not State a Claim for Severance Pay or COBRA Premiums.

Crane's claim to $300,000 in severance pay and COBRA premium payments is also governed by the "**Termination of Employment**" paragraph of Crane's employment agreement:

> Prior to the expiration of the Initial Term or any Extended Term, the Company may terminate your employment at any time for Cause or without Cause. . . .
>
> If (i) the Company terminates your employment Without Cause . . . and (ii) you have executed a full, complete, and binding release of the Company from any and all liabilities arising in connection with your employment by the Company or the termination thereof, on a form acceptable to the Company, then you will be entitled to severance compensation and benefits as follows:
>
>> (1) Termination By Rave Restaurant Group Without Cause or Resignation By You For Good Reason, in Each Case Without a Change In Control: In such an instance, you will receive:
>>
>> • The continued payment of your Base Annual Salary for the duration of the Severance Period . . . [which Crane claims equals $300,000].
>>
>> • For the duration of the Severance Period, group health insurance coverage at least equal to that which would have been provided to you if your employment had not been terminated or, at the Company's election, payments for the applicable COBRA premium for such coverage . . . .

*See* Tab A, pp. 3-4.

As this language shows, Crane was only entitled to $300,000 in severance pay and COBRA premium payments after termination without cause if he executed release "on a form acceptable

to the Company." Crane admits Rave presented a severance agreement and release, but he refused to sign it. *See* Compl. ¶ 32. Crane maintains that he refused to sign because it did not cover his claim to forfeited unvested restricted stock units (even though the employment agreement's severance provision did not address unvested stock units). *Id.* But having refused to comply with the condition of signing a release "on a form acceptable to the Company," Crane has no grounds on which to claim he is contractually entitled to the $300,000 in severance pay and COBRA premium payments he seeks. His breach of contract claim on this ground should be dismissed.

**F.     Crane's Common Law Fraudulent Inducement Claim Should Be Dismissed.**

Crane also alleges Rave fraudulently induced him to become its CEO by falsely promising to award Rave shares if certain performance benchmarks were met. *See* Compl. ¶¶ 47-54.

"Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury. Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform. Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (citations omitted). The relevant contract here is the January 6, 2017, employment agreement through which Crane became Rave's CEO, which initially addressed restricted stock unit awards. Crane has not adequately alleged the fraudulent intent or reliance parts of his claim.

**1.     The Complaint Does Not Adequately Allege Fraudulent Intent.**

To plead fraud, a plaintiff must "state with particularity" the circumstances of the fraud. *See* Fed. R. Civ. P. 9(b). Although knowledge and intent may be alleged generally, *id.*, the Fifth Circuit has explained that that is "no license to base claims of fraud upon conclusory allegations"

and noted that, "'[t]o plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud.'" *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 154 (5th Cir. 2010) (citation omitted). Crane fails to plead fraudulent intent under this standard.

Initially, Crane's conclusory allegation that, "[u]pon information and belief, Rave never intended to honor its promise of granting shares to Crane," Compl. ¶ 40, is precisely the sort of naked allegation of fraudulent intent that is inadequate.

Crane's allegation that it was Rave's "intention to terminate Crane to avoid transferring the shares in Rave" Crane seeks, *see id.* at ¶ 33, is also insufficient to state this element a fraud claim. Such an allegation is similarly conclusory and also does not address the relevant time—the late 2016 time during which the promise was allegedly made. *See Anderson*, 550 S.W.3d at 614. The allegation only says Rave intended to breach the alleged contractual obligation to deliver Rave shares in July of <u>2019</u>. The allegation does not adequately plead fraudulent intent in <u>2016</u>. *See id.*

A similar analysis applies to Crane's claim that Rave discharged others after him (some of whom were allegedly "entitled to equity in Rave") and that, "upon information and belief," Rave did not transfer shares to them too. *See* Compl. ¶¶ 38-39. Again, Rave's conduct in July of 2019 and thereafter does not address the relevant 2016 point in time for alleging fraudulent intent.

Indeed, the Complaint does not set out the required inference of fraud given that (a) the employment agreement Crane was supposedly fraudulently induced into signing expressly provided that Rave could terminate his employment without cause and (b) Crane acknowledges Rave tendered the severance agreement (and release) called for by the employment agreement after his not-for-cause termination, thus in fact performing under that agreement. (There is also no adequate allegation of fraudulent intent because, as explained above, there was no contractual obligation to deliver unvested shares. The employment agreement required execution of an RSU Award Agreement, and under it, unvested shares were forfeited upon Crane's termination.)

## 2. Crane Fails to Adequately Allege Justifiable Reliance.

To the extent Crane bases his fraudulent inducement claim on matters preceding the promises in his employment agreement, the Complaint also fails to adequately allege reliance.

Fraudulent inducement claims should be dismissed if a plaintiff has clearly and specifically disclaimed reliance on the alleged misrepresentations. *Shakeri v. ADT Sec. Servs.*, 816 F.3d 283, 296 (5th Cir. 2016). In the employment agreement, Crane agreed that "[a]ny representations that may have been made to [him] concerning the terms and conditions of employment, whether orally or in writing, are cancelled and superseded by this letter." *See* Tab A, p. 8. That is sufficient to bar his fraud claim. *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 868-70 (Tex. App.—Austin 2006, pet. dism'd by agr.) (clause stating that contract "supersedes and cancels all previous agreements, negotiations, commitments and understandings, with respect to the subject matter hereof, whether made orally or in writing" precluded reliance on such matters).

## G. The Statutory Fraud Claim Also Fails to State a Claim For Relief.

Finally, Crane's statutory fraud claim under Texas Business and Commerce Code § 27.01, *see* Compl. ¶¶ 55-62, fails to state a claim for relief for the same reasons as the common law fraud claim. The statutory fraud claim also fails because the statute only applies to a transaction that "actually effect[s] the conveyance" of stock between parties. *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 823-24 (Tex. App.—Houston [1st Dist.] 2015, no pet.). In *Ginn*, the court held that § 27.01 does *not* apply to a transaction that "only grants unvested stock" and thus did not apply to agreements that granted unvested stock analogous to the RSU Award Agreement here. *Id.* at 824. That holding shows that § 27.01 does not apply to Crane's statutory fraud claim, as Crane likewise only contends he was induced into a contract that concerned an unvested right to receive stock.

## IV. CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint with prejudice.

Respectfully submitted,

_____/s/ Scott M. McElhaney_____

W. Gary Fowler
Texas State Bar No. 07329250
Scott M. McElhaney
Texas State Bar No. 00784555
**JACKSON WALKER L.L.P.**
2323 Ross Avenue, Ste. 600
Dallas, Texas 75201
(214) 953-6000 (office)
(214) 953-5822 (facsimile)
gfowler@jw.com
smcelhaney@jw.com

**ATTORNEYS FOR DEFENDANT
RAVE RESTAURANT GROUP, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following counsel of record who have consented in writing to accept that Notice as service of this document by electronic means:

R. Rogge Dunn
Joshua J. Iacuone
Brian P. Shaw
Rogge Dunn Group PC
500 N. Akard Street., Ste. 1900
Dallas, Texas 75201

_____/s/ Scott M. McElhaney_____