IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SCOTT CRANE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Case No. 4:20-cv-00013 |
| | § | |
| RAVE RESTAURANT GROUP, INC., | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Under FED. R. CIV. P. 54(d)(2), Plaintiff Scott Crane ("Plaintiff" or "Crane") files this Motion for Attorneys' Fees ("Motion") to recover fees and interest, from Defendant Rave Restaurant Group, Inc. ("Defendant" or "Rave") and shows:

### I. SUMMARY

1. The requested fee amount reflects the reasonable hours Plaintiff's counsel Rogge Dunn Group, PC ("RDG") worked representing Plaintiff on a complex employment matter. The amount also reflects hourly rates that are fair and reasonable for work in the Eastern District of Texas. Indeed, because of the fee arrangement between Plaintiff and RDG, the amount Plaintiff seeks to recover is substantially *below* the base lodestar analysis, the benchmark for reasonable fees used by courts in this Circuit. *See* Exhibit 1 (Dunn Declaration. – with Exhibits A-E attached thereto).

2. In support of this Motion, Plaintiff attaches declarations of his counsel (R. Rogge Dunn – Exhibit 1) and lead trial counsel (Josh Iacuone – Exhibit 2), including copies of attorneys' invoices reflecting total fees and expenses. Plaintiff will file a separate bill of costs to recover those costs.

1

3.  Crane is entitled to recover attorneys' fees after he prevailed in this matter. A claim for attorneys' fees must be made by motion unless the substantive law treats the fees as an element of damages to be proved at trial. FED. R. CIV. P. 54(d)(2)(A); *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035 (5th Cir. 2014). A motion under Rule 54(d)(2) is the appropriate method for obtaining attorneys' fees when they are authorized by contract but are not recoverable as an element of damages. *Richardson*, 740 F.3d at 1039-40. The parties stipulated before trial that attorneys' fees would be addressed via post-trial motion.

## II.  PROCEDURAL BACKGROUND

4.  In 2017, Crane and Defendant entered into a Restricted Stock Unit Award Agreement (the "Agreement"). Def's Trial Ex. 18. Defendant later refused to award the units, so Crane sent a demand letter on July 15, 2019. Pl's Trial Ex. 60. Defendant again refused to compensate Crane, so he filed this lawsuit on January 6, 2020. (Dkt. #1).

5.  On March 6, 2020, Defendant filed a Motion to Dismiss. (Dkt. #8). Each side engaged in extensive briefing. *See* (Dkt. #12-18). The motion was denied. (Dkt. 23).

### A.  Defendant increased the cost of litigation by withholding information during discovery.

6.  On April 27, 2020, Defendant produced *only 51 pages* of documents that it "may use to support its claims or defenses ..." required by Fed. R. Civ. P. 26(1)(ii). *See* (Dkt. #30, ¶16).

7.  *Four months later,* on August 31, 2020, at 4:39 p.m.—the afternoon before Crane's expert designation deadline—Defendant produced an additional 441 pages of documents. *See* (Dkt. #30, ¶16). Then, on September 29, 2020 (155 days after its initial disclosures were due and 28 days after Crane's expert designation deadline), Defendant served its First Amended Initial Mandatory Disclosures. *See* (Dkt. #30, ¶20). In it, Rave doubled the number of witnesses - including two directors with knowledge of a "compensation committee"; that committee had <u>not</u>

2

been mentioned in Defendant's prior Disclosures and became a crucial aspect of Defendant's defenses at summary judgment and trial. The new information was also provided only three days before the case's first deposition. *See* (Dkt. #30, ¶20).

8. Depositions of two people (who were later on Defendant's trial witness list) were taken on October 1 and October 5, 2020. *See* (Dkt. #30, ¶21). In that October 5 deposition, Defendant's counsel asked many questions regarding accounting write downs that occurred after Rave terminated Crane, including some regarding an accounting concept called ASC 606. *See* (Dkt. #30, ¶21). In other words, <u>Defendant had failed to disclose a defense that it intended to make all along – and that defense later became Defendant's primary defense with two experts at trial</u>.

9. Two days later, Rave produced an additional 585 pages of previously withheld documents. On October 23, 2020, Rave produced an additional 392 pages of documents. *See* (Dkt. #30, ¶¶22-24).

10. On October 23, Plaintiff conferred with Defendant to ask for additional time to designate an expert based Defendant's surprise, previously undisclosed defense. Defendant's counsel asked for time to confer with his client; two weeks later (after Plaintiff's counsel made repeated inquiries), Defendant responded with opposition to Plaintiff's proposal. In lieu of conferring, it appears Defendant used that time to draft a summary judgment motion. *See* (Dkt. #30, ¶¶25-27).

11. Plaintiff was deposed on November 18, 2020. The day after that deposition—while there was a pending motion by Plaintiff to extend deadlines based on Defendant's surprise/untimely Disclosures and before Plaintiff had deposed Defendant's corporate representative—Defendant filed a summary judgment motion. (Dkt. #31).

12. After the Court modified the scheduling order, Defendant withdrew a portion of its summary judgment motion and Plaintiff was able to complete discovery.

### B. After Defendant disclosed information, Plaintiff took additional depositions, including Mark Schwarz, although he failed to show for his first deposition.

13. Finally, after getting past Defendant's unnecessary roadblocks that increased the amount of time spent on this case, three more depositions were taken on:

    a. May 18, 2021 (witness later on Defendant's trial witness list);
    b. May 20, 2021 (witness later on Defendant's trial witness list); and
    c. June 17/22, 2021 (Mark Schwarz as corporate representative.

14. Schwarz's deposition was similar to his improper actions at trial. First, he was a no-show at his first scheduled deposition on June 17; thus, the deposition was rescheduled to June 22. At the second scheduled deposition, Schwarz refused to answer questions. Thus, Plaintiff's counsel called the "Discovery Hotline." Magistrate Judge Craven held a hearing and "instructed Defendant's counsel to advise the deponent to answer the questions as asked." (Dkt. #68).

### C. Defendant's primary summary judgment requests are denied and Plaintiff wins his breach of contract claim at trial.

15. On August 4, 2021, the Court denied Defendant's summary judgment motion regarding the two most significant claims in this case and granted summary judgment on claims for severance, bonus payment, and vacation pay. (Dkt. #72).

16. On October 29, 2021, the jury returned a verdict in favor of Crane on his breach of contract claim against Defendant. (Dkt. #108). The Court entered a final award in this lawsuit on November 1, 2021. (Dkt. #111).

### III. LEGAL STANDARD

17. The Court is familiar with the legal standard for the award of, and the reasonableness of, fees. *See e.g., Solferini as Tr. of Corradi S.p.A. v. Corradi USA, Inc.*, No. 4:18-

CV-00293, 2020 WL 5653961, at *1 (E.D. Tex. Sept. 23, 2020), *aff'd,* No. 20-40645, 2021 WL 3619905 (5th Cir. Aug. 13, 2021). The Court utilizes the lodestar analysis under a two-step process explained in *Solferini*:

> First, courts determine the reasonable hours spent by counsel and a reasonable hourly rate, and then multiply the two together to get the base fee or lodestar. Second, courts adjust the lodestar up or down based on relevant factors, found in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).
>
> The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.
>
> *Id.* at *1-2 (citations omitted).[1]

## IV. APPLICABLE LAW

18. "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *See e.g., Solferini as Tr. of Corradi S.p.A.*, 2020 WL 5653961, at *1. Here, the jury returned a verdict in favor of Crane on his breach of contract claim (under state law) against Defendant. (Dkt. #108). Thus, as previously argued by Defendant, Texas law applies. *See e.g.,* (Dkt. #44 at p. 1, ¶¶2-3 (Def's Reply to Mot. Summ. J.)).

19. Under Texas law, Crane's attorneys' fees are recoverable for his breach of contract claim under TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8) ("A person may recover reasonable attorney's fees from an individual or organization . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.").

> Texas common law follows the "American Rule" and the Texas Civil Practice & Remedies Code provides a statutory exception to the Rule for cases involving breach of contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001; *1/2 Price Checks*

---

[1] *See also Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019).

5

> *Cashed v. United Auto. Ins. Co.,* 344 S.W.3d 378, 382 (Tex. 2011). The breach of contract exception states that a person may recover reasonable attorneys' fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract—so long as the claimant is represented by an attorney, the claimant presents the claim to the opposing party, and payment for the amount owed is not tendered before the expiration of the 30th day after the claim is presented. TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001, 38.002.
>
> *Hovanec v. Midwest Underground, Inc.*, No. 4:14-CV-409, 2015 WL 4082863, at *1 (E.D. Tex. June 23, 2015).

20. Fees under Section 38.001 are not discretionary. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) ("Statutes providing that a party "may recover", "shall be awarded", or "is entitled to" attorney fees are not discretionary."); *see also MidCap Media Fin., LLC Pathway Data, Inc. v. MidCap Media Fin., LLC*, No. 1:15-CV-00060-SH, 2021 WL 4267719, at *1 (W.D. Tex. Sept. 20, 2021) ("Under Texas law, when a prevailing party in a breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) (citing TEX. CIV. PRAC. & REM. CODE § 38.001(8).").

21. Under Texas law, "[i]t is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable. The presumption may be rebutted." TEX. CIV. PRAC. & REM. CODE § 38.003; *see also Rohrmoos Venture*, 578 S.W.3d at 498-99.

22. On July 14, 2019, Crane's counsel presented Crane's claim to Defendant and no payment was tendered. Pl's Trial Ex. 60. Also, Plaintiff Crane is a person and Defendant is a corporation. Thus, fees are recoverable for Crane's breach of contract claim under TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(8).

## V. PLAINTIFF SEEKS TO RECOVER REASONABLE ATTORNEYS' FEES

23. Crane seeks to recover the amount of $<u>818,144.75</u> as reasonable and necessary legal fees through November 15, 2021.

6

24. Plaintiff was referred to RDG by *Defendant's own general counsel*, who stated that RDG "is the best law firm" to help Plaintiff on this matter. This is undisputed and clear in the record.

### A. Crane's attorneys expended a reasonable amount of hours.

25. RDG spent a total of 1,624 hours of legal work successfully litigating this case. RDG seeks to recover fees for 1,225 of those hours. *See* Exhibit 1, Exhibit A (summary of hours and fees). Those hours were not only reasonable, but also necessary to represent Crane adequately on a case involving detailed fact discovery, motion practice, pre-trial preparation, and trial. Detailed time records are filed with this motion.

26. Even at a glance, the work performed was extensive, challenging, and diverse. Among other tasks, RDG investigated and researched Crane's claims; prepared Crane's complaint; drafted and responded to discovery requests; conducted months of document review; took or defended six depositions – including remote depositions that were a novel issue during COVID restrictions; researched factual issues relating to Defendant's claims and defenses; responded to Defendant's summary judgment motion; attended mediation; briefed and responded to motions *in limine*; prepared and submitted the parties' Joint Final Pretrial Order and Crane's jury instructions; prepared for and conducted a five-day jury trial.

27. Defendant hired three different respectable law firms to defend against the claims in this lawsuit. (Dkt. # 7, 48). Each law firm (DLA Piper (4,000+ attorneys), Jackson Walker (400+ attorneys), and Littler Mendelson (1,600+ attorneys) is sizable.

28. Exhibit A attached to the Dunn Declaration is a summary of the fees sought, with a breakdown per timekeeper:

| Name | Title | Rate | Total Hours Spent | Reduction of Time | Hours Sought to be Recovered | Amount Sought |
|---|---|---|---|---|---|---|
| Dunn | Partner | $925.00 | 42.9 | 18.8 | 24.1 | $22,292.50 |
| Iacuone | Partner | $797.50 | 715.7 | 210.8 | 504.9 | $402,657.75 |
| Collins | Partner | $600.00 | 12.6 | 4.3 | 8.3 | $4,980.00 |
| Shaw | Partner | $750.00 | 224.7 | 33.2 | 191.5 | $143,625.00 |
| McAllister | Partner | $750.00 | 252.4 | 24.8 | 227.6 | $170,700.00 |
| Myers | Associate | $385.00 | 10.3 | 0.6 | 9.7 | $3,734.50 |
| Richardson | Associate | $385.00 | 26.9 | 1.5 | 25.4 | $9,779.00 |
| McComber | Associate | $385.00 | 10.3 | 0.9 | 9.4 | $3,619.00 |
| Gross | Associate | $425.00 | 24.2 | 0.8 | 23.4 | $9,945.00 |
| Thomas | Paralegal | $195.00 | 258.5 | 85.4 | 173.1 | $33,754.50 |
| Jones | Paralegal | $195.00 | 22.3 | 7.2 | 15.1 | $2,944.50 |
| Pounds | Paralegal | $195.00 | 11.2 | 3.9 | 7.3 | $1,423.50 |
| Vanderburg | Paralegal | $195.00 | 12.8 | 6.7 | 6.1 | $1,189.50 |
| | | | 1624.8 | 398.9 | 1225.9 | |
| **Fees Requested Through October 31, 2021** | | | | | | **$810,644.75** |
| Anticipated time Through November 15, 2021 for preparation and presentment of Motion for Fees | | | | 15 | 15 | |
| Blended Hourly Rate | | | | | $500.00 | |
| | | | | | | $7,500.00 |
| **Total Fees Requested** | | | | | | **$818,144.75** |

29.     There are multiple timekeepers but, as addressed in the Iacuone Declaration, any duplication was reduced in arriving at the number of hours sought to be recovered. For example, five paralegals worked on this case. One assisted on only one date and is thus not listed. Four other paralegals are listed – two departed the firm. There was overlap while the case transitioned from one paralegal to another (*e.g.*, from Jones to Thomas) but any overlap is deleted from the requested fee. Iacuone Declaration, ¶ 10.

30.     Likewise, attorneys Myers, Shaw, and McAllister are listed – their time entries do not overlap. Myers departed and was replaced by Shaw; he departed and was replaced by McAllister. In other words, Plaintiff's counsel went to great lengths to be efficient for Mr. Crane and to be effective for this present fee request. Iacuone Declaration, ¶ 11.

31. As reflected in the billing records, associates (McComber, Richardson, and Gross) performed certain isolated research assignments because their actual hourly rates are lower than the partners. Further, partners with lower rates (Collins, Shaw, McAllister) performed more junior partner tasks than the partners (Dunn and Iacuone) with higher rates. The reasonableness of RDG's decisions is demonstrated in part by how closely they mirror—or were leaner than—those Defendant made. Crane sent only one attorney to depositions and two attorneys from RDG represented Crane at trial, while Defendant was represented by three attorneys at trial. Iacuone Declaration, ¶ 12.

32. Certain actions by Defendant added to the number of hours billed by RDG. Specifically, Defendant's primary witness was Mark Schwarz. His behavior throughout the lawsuit added to the hours billed. Iacuone Declaration, ¶ 13. Examples include:

  a. Without notice, he failed to attend his first scheduled deposition. He claimed he was unable to locate his counsel's office. The distance between Schwarz's office (where he's worked for over twenty years) to his attorneys' office is 0.6 miles.

  b. During his re-scheduled deposition, Schwarz arrived approximately 30 minutes late, and his refusal to answer questions delayed the deposition significantly. That refusal required Plaintiff's counsel to call the hotline to involve Magistrate Judge Craven. During the call Magistrate Judge Craven threatened to sanction Schwarz and her order "instructed Defendant's counsel to advise [Schwarz] to answer the questions as asked." (Dkt. #68).

  c. Schwarz's deposition answers included perjury, which increased the amount of time required for Crane's attorneys to prepare for trial.

  d. During trial, Schwarz's testimony contradicted his deposition testimony so often that he was impeached by video deposition clips in excess of 12 times. His corresponding impeachment lengthened the trial.

  e. During trial, when questions by Defendant's counsel, Schwarz recalled many details about a 2006 lawsuit by Ronnie Parker against Defendant. But when Schwarz was questioned by Plaintiff's counsel, Schwarz denied any memory of being deposed for six-hours in that case. When shown the transcript and asked

      if his memory was refreshed, he continued to claim he could not recall that deposition.

  f.  Later that day, Defendant's in-house counsel claimed that he "had been looking all over for that transcript" and indicated he/Schwarz had been looking for that transcript during the days before trial. Defendant's in-house counsel was also in the courtroom when Schwarz testified that he had no recall of even being deposed in the Parker lawsuit.

  g.  Also, when Schwarz was shown the transcript (it could not be seen by the jury) and asked if his memory was refreshed and could recall being deposed, he avoided the question to answer, "I see your law firm on there." His answer was made deliberately to violate the Court's Order on the Motion in Limine – an order *agreed* by the parties. (Dkt. #95 at No. 5) ("Any testimony, argument or mention of a document that Rogge Dunn, his prior law firm (or any lawyers there), or any other lawyers at Rogge Dunn Group PC previously represented any other Rave employees, including Ronnie Parker, against Rave or its affiliates.").

*Id.*

33.   Certain of Defendant's litigation tactics added to the number of hours billed by RDG. For example, Defendant filed a motion to dismiss and the briefing was extensive. (Dkt. 8). Indeed, Defendant requested leave to exceed the page limit for its reply (*see* Dkts. #15-17), leading Plaintiff to file a sur-reply (Dkt. 18). The motion was denied. (Dkt. #23).

34.   Further, Defendant's repeated withholding of information and belated disclosure of witnesses, defenses, and documents unnecessarily increased the cost of litigating this lawsuit. *See supra* §II.A.

**B. Crane's attorneys' rates were reasonable.**

35.   Crane's counsel charged reasonable rates for their services. Attached to the Dunn Declaration is the initial and modified engagement agreements between Crane and RDG. Dunn Declaration, Exhibits D and E. As shown in the invoices (July-Aug. 2019), Plaintiff initially retained RDG at usual and customary 2019 hourly rates: Dunn at $850/hour; Iacuone at $695/hour; Collins at $600/hour; and paralegals at $195/hour. Dunn Declaration, Exhibit D.

36. Later, Crane requested RDG to pursue litigation under a blended hourly/contingent rate. Dunn Declaration, Exhibit E. Under the revised Engagement, each attorney charged $250/hour and RDG is entitled to 20% of any monetary recovery. *Id.*

37. Crane concurrently files declarations from his counsel Dunn and Iacuone, who were each disclosed as experts regarding attorneys' fees in this lawsuit.

38. Crane also files his invoices with limited redactions for privilege and work product. *See* Dunn Declaration, Exhibit B (line-item reductions noted thereon). Crane's counsels' declarations support an award of attorneys' fees. *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002). Further, "there is a rebuttable presumption of reasonableness for fees that are 'usual' or 'customary.'" *Id.* citing TEX. CIV. PRAC. & REM. CODE § 38.003. And "where the fees are tried to the court, as they were in this case, the statute authorizes the judge to take judicial notice of the "usual and customary fees" and the contents of the case file. *Id.* at § 38.004. Texas courts have upheld fee awards using these presumptions where the attorneys had a contingent fee arrangement." *Id.* (citations omitted).

39. Crane asks the Court to award fees at the rates and times summarized on Exhibit A attached to the Dunn Declaration under the lodestar analysis.

C. **Additional factors considered by Courts demonstrate the reasonableness of the fees Crane incurred in this matter.**

40. After calculating the lodestar, courts may adjust the figure up or down based on factors such as the difficulty of the questions presented, the skill required to perform the legal services properly, the preclusion of other employment by the attorney due to acceptance of the case, and the results obtained. These factors suggest that even a fee award above the lodestar would be justified. As detailed above and in RDG's billing records, this case presented challenging legal and factual questions. It required experienced counsel, who were precluded from performing other

11

work at their full hourly rates during the course of this engagement, and the ultimate result obtained a favorable result for Crane.

41. A reason to adjust the lodestar factor up is that Defendant spent over $1,000,000 in legal fees to defend a similar lawsuit. Pl's Trial Ex. 1. In *Ronnie Parker v. Rave Restaurant Group*, Defendant was sued by its former CEO regarding compensation owed – just like the instant lawsuit. That case settled before trial in 2006 and Defendant spent over $1,000,000 in legal fees – an amount that would be even higher today. *See* Pl's Trial Ex. 1.

## VI. PLAINTIFF SEEKS TO RECOVER A REASONABLE AMOUNT OF INTEREST

42. Crane seeks (a) pre-judgment interest at the highest rate allowed by law from October 15, 2019 until the date of judgment and (b) post-judgment interest at the highest rate allowed by law from the date of judgment until paid in full.

43. Under Tex. Fin. Code § 302.002, prejudgment interest accrues at the rate of six percent a year on the principal, when there is no agreement between a creditor and obligor on a rate of interest, accruing on the 30th day after the date on which the amount is due.

44. Here, the amount was originally due on October 15, 2019. Interest began accruing on November 14, 2019, at a per diem of $151.89 (6% x 1/365 x $924,000). There are 719 days between November 14, 2019 and November 1, 2021 (including the end date). Accordingly, Plaintiff requests the amount of $109,208.90 ($151.89 x 719) as pre-judgment interest.

45. Plaintiff also requests post-judgment interest on the total award under the applicable federal rate (under 28 U.S.C. 1961) from the date judgment is entered until it is paid in full.

## VII. PLAINTIFF SEEKS FEES IN ANY APPEAL INITIATED BY DEFENDANT.

46. Defendant's recent 10-Q filed with the SEC stated:

On November 1, 2021, the U.S. District Court for the Eastern District of Texas entered judgment against the Company in the amount of $924,000 plus pre- and

12

post-judgment interest and court costs on breach of contract claims asserted by the Company's former Chief Executive Officer, Scott Crane. The Company intends to appeal the judgment to the Fifth Circuit Court of Appeals.

*See* Exhibit 3 (Excerpt from Nov. 4, 2021 filing).

47.     Thus, Plaintiff requests the Court award fees that Plaintiff will incur in any appeal of any decision from this Court in this lawsuit in an amount to be determined at the conclusion of the appeal. *See Instone Travel Tech. Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003); *see also Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2014 WL 549380, at *5 (S.D. Tex. 2014) (declining to award conditional appellate fees before the appeal because the request "is merely a speculative dollar figure without any information by which the Court could determine whether the amount requested is reasonable.").

## VIII.   CONCLUSION

48.     Crane respectfully requests that the Court award Crane's reasonable attorneys' fees of $818,144.75, plus pre-judgment interest in the amount of $109,208.90. Crane reserves his right to file supplemental petitions to reflect additional fees, costs, and expenses that he has incurred and/or will incur from November 16, 2021 onwards relating to, among other things, any pleadings or appeal filed by Defendant.

Respectfully submitted,

/s/
R. ROGGE DUNN
Texas Bar No. 06249500
Email: rdunn@roggedunngroup.com
**JOSHUA J. IACUONE**
Texas Bar No. 24036818
Email: iacuone@roggedunngroup.com
**GREG McALLISTER**
Texas Bar No. 24071191
E-mail: mcallister@roggedunngroup.com

**ROGGE DUNN GROUP PC**
500 N. Akard Street, Suite 1900
Dallas, Texas 75201
Telephone: 214.888-5000
Facsimile: 214.220.3833

**ATTORNEYS FOR PLAINTIFF SCOTT CRANE**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument was served on all counsel of record on the 15th day of November 2021, via ECF.

/s/
JOSHUA J. IACUONE

## CERTIFICATE OF CONFERENCE

On November 12, 2021, I conferenced with counsel for Defendant who indicated that Defendant is opposed to the relief sought in this motion for reasons such as Defendant intends to appeal. Discussions conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/
JOSHUA IACUONE