# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

SCOTT CRANE, §
§
    *Plaintiff,* § Civil Action No.  4:20-CV-13-ALM
§ Judge Mazzant
v. §
§
RAVE RESTAURANT GROUP, INC., §
§
    *Defendant.* §
§

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff Scott Crane's Motion for Attorneys' Fees (Dkt. #117) and Request to Enter Plaintiff's Bill of Costs (Dkt. #118).  Having considered the motions and the relevant pleadings, the Court finds the Motion for Attorneys' Fees (Dkt. #117) should be **GRANTED** and the Request to Enter Plaintiff's Bill of Costs (Dkt. #118) should be **GRANTED in part**.

## BACKGROUND

Defendant Rave Restaurant Group. Inc. ("Rave") is a public company that owns a chain of pizza restaurants (Dkt. #1 ¶ 11).  Plaintiff Scott Crane ("Crane") worked as Rave's Chief Executive Officer from January 2017 to July of 2019 (Dkt. #1 ¶¶ 18, 24).  An employment agreement and multiple Restricted Stock Unit Award ("RSUA") Agreements governed the terms of Crane's employment and compensation with Rave.  Under these agreements, Crane was entitled to a grant of 300,000 Restricted Stock Units ("RSU").  The vesting date for the RSUs was October 15, 2019 (Dkt. #1 ¶ 26).  In addition, Crane had to meet certain performance criteria before the RSUs would vest (Dkt. #1 ¶¶ 25–29).  According to Crane, the promise of future shares in Rave enticed him to join the company as its CEO (Dkt. #1 ¶ 16).

Despite improvements to Rave's balance sheets under Crane's leadership, in July of 2019, Rave's Chairman of the Board, Mark E. Schwarz ("Schwarz"), terminated Crane and refused to award Crane any of the RSUs he earned pursuant to the Agreements.  On January 6, 2020, Crane filed suit against Rave for breach of contract, fraudulent inducement, statutory fraud, and declaratory judgment (Dkt. #1).

On November 27, 2020, Rave filed a motion for summary judgment (Dkt. #36).  In its Memorandum Opinion and Order dated August 4, 2021, the Court disposed of all of Crane's claims except for his breach of contract claim for RSUs and fraudulent inducement claim (Dkt. #72).

Thus, the case proceeded to trial on October 25, 2021.  On October 29, 2021, the jury rendered a verdict in favor of Crane on his breach of contract claim and found $924,000.00 would fairly and reasonably compensate Crane for damages stemming from Rave's breach (Dkt. #108). The Court entered its Final Judgment on November 1, 2021 (Dkt. #111).

On November 15, 2021, Crane filed his Motion for Attorneys' Fees (Dkt. #117).  Rave responded on December 3, 2021 (Dkt. #126).  Crane replied on December 9, 2021 (Dkt. #131).

On November 15, 2021, Crane also filed his Request to Enter Plaintiffs' Bill of Costs (Dkt. #118).  Rave responded on December 3, 2021 (Dkt. #125).  On December 9, 2021, Crane replied (Dkt. #133).

## LEGAL STANDARD

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Further, when a statute allows a prevailing party to recover its fees, that provision applies to appellate fees as well. *Williams v. Trustmark Ins. Co.*, 173 F. App'x 330, 334 (5th Cir. 2006). Under Texas law, it is the movant that bears the burden of proof to show the reasonable fees they

are owed.  *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (applying substantive federal law but also discussing Texas's adoption of the lodestar method in other cases).  The movant may calculate their reasonable and necessary attorneys' fees using either the lodestar method or the market value method.  *Id.*; *AMX Enters. v. Master Realty Corp.*, 283 S.W.3d 506, 515 (Tex. App.—Fort Worth 2009, no pet.).  There are certain causes of action that require the use of the lodestar calculation.  *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013).  However, even if the lodestar calculation is not required, if the movant produces evidence of the lodestar calculation, courts typically apply the lodestar calculation.  *Montano*, 414 S.W.3d at 736.

Using the lodestar analysis, the computation of a reasonable attorneys' fee award is a two-step process.[1]  *El Apple*, 370 S.W.3d at 760 (citing *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied)).  First, courts determine the reasonable hours spent by counsel and a reasonable hourly rate, and then multiply the two together to get the base fee or lodestar.  *Id.* (citing *Gonzales*, 72 S.W.3d at 412).  Second, courts adjust the lodestar up or down based on relevant factors, found in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[2]

The *Johnson* factors are:

(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

---

[1] Although state law applies, Texas courts occasionally "draw on the far greater body of federal court experience with lodestar."  *El Apple*, 370 S.W.3d at 764–65.
[2] Texas courts also use a similar set of factors, the *Arthur Andersen* factors, to determine reasonableness.  However, when courts use the lodestar calculation, they tend to use the *Johnson* factors.

*Gonzales*, 72 S.W.3d at 412 (citing *Johnson*, 488 F.2d at 717–19).  "If some of these factors are accounted for in the lodestar amount, they should not be considered when making adjustments." *Id.* (citing *Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 529 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).  The lodestar is presumptively reasonable and should be modified only in exceptional cases.  *El Apple*, 370 S.W.3d at 765.

## ANALYSIS

Crane seeks attorneys' fees, pre-judgment interest, post-judgment interest, and any attorneys' fees Crane may incur during the appeal any of the Court's decisions (Dkt. #117).  Crane also requests the Court enter Crane's proposed Bill of Costs (Dkt. #118).  The Court will begin with Crane's motion for attorneys' fees.

### I.        Motion for Attorneys' Fees

Crane moves for attorneys' fees on his breach of contract claim under § 38.001(b)(8) of the Texas Civil Practice and Remedies Code (Dkt. #117).  Rave asserts Crane's request should be reduced or denied.  First, Rave argues Crane failed to present his claim for breach of contract to Rave, and thus is not eligible for fees (Dkt. #126).  Second, Rave maintains Crane's request is unreasonable because Crane did not present evidence of the prevailing market rate (Dkt. #126). Finally, Rave argues Crane has not used proper billing judgment to reduce hours (Dkt. #126). More specifically, Rave argues: (1) fees for routine clerical work are not allowed; (2) fees for duplicative work performed by counsel are not allowed; (3) block billing is not allowed; (4) Crane's submission contains vague billing entries; and (5) time was spent advancing unrecoverable claims (Dkt. #117 at pp. 8–12).  The Court first addresses whether Crane is eligible for attorneys' fees, then it examines Rave's argument as to why the Court should deny Crane's request for fees.

### A.  Eligibility for Attorneys' Fees

As an initial matter, the Court finds Crane is eligible for an award of attorneys' fees.  The parties agree that the resolution of these issues is governed by Texas law because the underlying dispute is governed by Texas law.  *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  In Texas, a prevailing party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.  TEX. CIV. PRAC. & REM. CODE § 38.001(8).

To recover attorneys' fees under the statute, as applicable to this case, certain requirements must be met: (1) recovery of a valid claim in a suit on an oral or written contract; (2) representation by an attorney; (3) presentment of the claim to the opposing party or a representative of the opposing party; and (4) failure of the opposing party to tender payment of the just amount owed before the expiration of thirty days from the day of presentment.  TEX. CIV. PRAC. & REM. CODE §§ 38.001–.002 (1986).  Each prerequisite must be met to recover attorneys' fees under the statute.  *See New Amsterdam Casualty Co. v. Tex. Indus. Inc.,* 414 S.W.2d 914 (Tex. 1967).

Presentment is a demand or request for payment or performance, whether written or oral.  *See Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981).  To satisfy the requirement of presentment, a plaintiff must plead and prove that a debt or a claim was presented to the defendant and that the defendant failed to tender performance.  *Sacks v. Hall*, 481 S.W.3d 238, 251–253 (Tex. App.— Houston [1st Dist.] 2015, pet. filed).  However, "[n]o particular form of presentment is required." *Jones*, 614 S.W.2d at 100.

Here, Crane pleaded facts and recited the elements of a breach of contract claim sufficient to state a plausible claim for relief (Dkt. #1).  Additionally, Crane's Complaint contains a request for reasonable attorneys' fees (Dkt. #1 at p. 14).  In its answer, Rave did not contest presentment

(Dkt. #24).  Therefore, Crane has properly pleaded presentment.  *See Marrs & Smith P'ship v. Sombrero Oil & Gas Co., L.L.C.*, 511 S.W.3d 53, 63–64 (Tex. App.—El Paso 2014, pet. denied) (pleading that all conditions precedent were met was sufficient); *Shin-Con Dev. v. I.P. Invest., Ltd.*, 270 S.W.3d 759, 768 (Tex. App.—Dallas 2008, pet. denied) (claimant may plead generally that all conditions precedent to recovery have been performed; failure of opposing party to specifically deny that claimant presented contract claim waives party's right to complain).  Crane's failure to plead Section 38.001 in his Complaint is immaterial.  *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("If a party pleads facts which, if true, entitle him to the relief sought, he need not specifically plead the applicable statute in order to recover [attorney's fees] under it."); *see also Allright, Inc. v. Guy*, 696 S.W.2d 603, 605 (Tex. App.—Houston [14th Dist.] 1985, no writ) (explaining that "all that is necessary is the assertion of the right to recover and a request for recovery" to meet presentment).  Accordingly, Crane has satisfied the first requirement of presentment of his claim.

As proof of presentment, Crane relies on a letter Crane's counsel sent to Rave on July 15, 2019 (the "Letter") (Crane Tr. Ex. 60).  The Letter notified Rave of Crane's hiring of counsel and alleged Crane was entitled to nine months' compensation pursuant to the Employment Agreement, a bonus payment pursuant to the Employment Agreement, and 300,000 RSUs.  While Rave correctly notes Crane's request for the RSUs included plenty of language relating to his fraudulent inducement claim, a portion of the Letter also discussed and cited caselaw regarding condition precedents—a concept that sounds in contract law.  The end of the Letter asserts: "Rave will do the right thing and deliver the 300,000 shares to Crane, either voluntarily or by Court compulsion after spending a large amount of money paying Rave's ***and Crane's*** attorneys' fees."  (emphasis in original).

6

The purpose of presentment is to allow the party against whom a claim is asserted an opportunity to pay it or tender performance without incurring an additional obligation to pay the claimant's attorneys' fees. *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 187 (Tex. App.—Houston [1st Dist.] 2018, no pet.). The Letter undoubtedly afforded Rave the opportunity to pay or tender performance without incurring additional obligation. *See Carr v. Austin Forty*, 744 S.W.2d 267, 271 (Tex. App.—Austin 1987, no writ) (holding that letter notifying opposing party of termination of contract and requesting release of letter of credit constituted proper presentment because "[t]he elements of notice, time and proof of amount are all present"). The Court therefore finds the Letter is sufficient proof of presentment.

Thus, Crane has met the requirement for presentment, *Sacks*, 481 S.W.3d at 251–253, and is eligible for attorneys' fees.

## B. Reasonableness of Crane's Attorneys' Fees and Expenses

In awarding attorneys' fees, the starting point is to calculate a base lodestar figure, which is reached by determining the reasonable hours worked multiplied by a reasonably hourly rate. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). This base lodestar calculation, when supported by sufficient evidence, reflects presumptively reasonable and necessary attorneys' fees. *Id.* at 499.

Crane seeks $818,144.75 in attorneys' fees. In support of his motion for attorneys' fees, Crane provides the Declaration of R. Rogge Dunn ("Dunn") (Dkt. #117, Exhibit 1), the Declaration of lead trial counsel Josh Iacuone ("Iacuone") (Dkt. #117, Exhibit 2), along with itemized billing records detailing the attorneys' and paralegals' hourly rates and time spent on each task performed (Dkt. #117, Exhibit A). Rave contests the reasonableness of Crane's rates for failure to provide

evidence of the prevailing market rate and failure to use proper billing judgment to reduce hours (Dkt. #126 at pp. 6, 8).  The Court will examine these arguments in turn.

### i.      Reasonable Hourly Rate

To start, "[t]he reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, No. 6:12-cv-550, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  The relevant legal community is the community where the district court sits.  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  "The fee applicant bears the burden to prove by competent evidence that the requested rate is reasonable."  *Powell v. Comm'r*, 891 F.2d 1167, 1173 (5th Cir. 1990).  Parties usually establish the reasonable hourly rate by providing affidavits of other attorneys practicing in the community.  *Tollett*, 285 F.3d at 368.  However, "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable hourly rate.  *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012).  The trial court itself is also considered an expert as to the reasonableness of attorney's fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees.  *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978)).

Crane asserts that the reasonable hourly rates for its timekeepers are as follows:

| Timekeeper | Title | Rate | Hours |
|---|---|---|---|
| Dunn | Partner | $925.00 | 24.1 |
| Iacuone | Partner | $715.70 | 504.9 |
| Bryan Collins ("Collins") | Partner | $600.00 | 8.3 |
| Brian Shaw ("Shaw") | Partner | $750.00 | 191.5 |
| Greg McAllister ("McAllister") | Partner | $750.00 | 227.6 |
| Michael Myers ("Myers") | Associate | $385.00 | 9.7 |
| Anna Richardson ("Richardson") | Associate | $385.00 | 25.4 |

| Cori McComber ("McComber") | Associate | $385.00 | 9.4 |
| David Gross ("Gross") | Associate | $425.00 | 23.4 |
| Rhonda Thomas ("Thomas") | Paralegal | $195.00 | 173.1 |
| Celeste Jones ("Jones") | Paralegal | $195.00 | 15.1 |
| Pounds[3] | Paralegal | $195.00 | 7.3 |
| Tina Vanderburg ("Vanderburg") | Paralegal | $195.00 | 6.1 |

(Dkt. #117, Exhibit 1-A).   Rave contends Crane provided no evidence of the prevailing market rates, and therefore the evidence is insufficient to support Crane's claim for attorneys' fees (Dkt. #126 at p. 7).  Crane points to the uncontroverted declaration of Rogge Dunn as sufficient evidence of the prevailing market rate (Dkt. #131 at p. 3).  The Court finds Crane has presented sufficient evidence of the prevailing market rate.

Here, Crane submitted the Declaration of Rogge Dunn, a copy of Dunn's resume, along with "results" and "testimonials" from the Rogge Dunn Group's website (Dkt. #117, Exhibit 1). Dunn is clearly an experienced and skilled litigator[4] qualified to opine on prevailing market rates. Although affidavits of attorneys who did not bill on the matter are "generally" used to establish the reasonable hourly rate, this is not a requirement.  *See Smith & Fuller, P.A.*, 685 F.3d at 491 (stating that "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable hourly rate).  Furthermore, Dunn's Declaration provides sufficient background information on the other attorneys who worked on this case, detailing the amount of time each associate and partner have been licensed in the state of Texas (Dkt. #117, Exhibit 1 ¶ 11).  *Contra See Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F.Supp. 979, 987 (S.D. Tex. 1997) (holding attorneys' time was not compensable where no background information was provided).   Thus, Dunn's declaration,

---

[3] Crane did not provide Pounds' first name.
[4] Dunn has been a licensed attorney since 1983.  He has been selected as a "Super Lawyer" every year the award has been given.  Additionally, he is admitted to practice in the U.S. Supreme Court, the Fifth Circuit Court of Appeals, all federal district courts in Texas, and various other federal district courts in Arkansas, Oklahoma, and Missouri.  *See* Dkt. #117, Exhibit 1).

combined with Iacuone's Declaration and other information supplied to the Court, is sufficient evidence of the prevailing market rate.

However, providing sufficient evidence of prevailing market rate does not automatically entitle the movant to the attorneys' fees requested.  The Court must now determine whether the rate Crane requested was reasonable.

In determining reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).  Starting with the attorneys' regular rates, Dunn charges $1,000 an hour and Iacuone charges $900 an hour (Dkt. #117, Exhibit A at ¶ 12).  However, Crane's requested rate for Dunn is only $925.00 and the requested rate for Iacuone is $715.70 (Dkt. #117).  When Crane first retained the Rogge Dunn Group as his counsel, the attorneys' rates were lower than those charged today, or even the rates requested (Dkt. #117 ¶ 35).  Thus, the requested rate represents a hybrid between the current rates and the rates charged in 2019, when Crane retained counsel.

Considering their years of experience and the nature of this case, Dunn's and Iacuone's rates—along with rates of the other attorneys and staff who worked on this case—are consistent with the prevailing market rate for either the Sherman or the Dallas-Fort Worth legal community.[5] *See e.g., Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding a range from $537.00 to $862.00 per hour to be a reasonable rate to charge); *see also Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp.

---

[5] The Sherman Division covers some parts of the city of Dallas.  For example, a small portion of Dallas is included in Collin County, a county in the Sherman Division.  *See* https://www.collincountytx.gov/living/Documents/CollinArea .pdf (last visited Nov. 19, 2021).  Further, the Office of Personnel Management designates the Sherman Division (located in Grayson County) to be in the Dallas-Fort Worth locality pay area.  Thus, the Sherman Division's pay scale for court employees is based on the Dallas-Fort Worth area.  *See* OPM, *Policy, Data, Oversight*, https: //www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2021/locality-pay-area-definitions/#TX-OK  (last visited Feb. 7, 2022).  Accordingly, this Court has previously found that the Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates.  *See Solferini v. Corradi USA, Inc.*, No. 4:18-cv-293-ALM, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases).

3d 892, 906–07 (E.D. Tex. 2017) (finding a range from $450.00 to $860.00 per hour to be a reasonable rate to charge for attorneys, and a range of $150.00 to $250.00 to be a reasonable rate to charge for staff).

Moreover, because attorneys with different billing rates worked together on this case, Crane submits a blended hourly rate of $500 an hour for Rogge Dunn Group's services for preparation of its motions for fees (Dkt. #11, Exhibit 1-A).  A blended hourly rate for a firm's legal staff is commonly used in preparing fee requests.  *Newby v. Enron Corp.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008); *see also Fisher Sci. Inter., Inc. v. Modrovich*, No. Civ. A H-03-0467, 2005 WL 3348901, *10 (S.D. Tex. 2005) (using blended rate for core team of senior partners, junior or mid-level partners, experienced associates, associates, and legal assistants).  Here, the blended rate aligns with prevailing rates in the Eastern District of Texas.  *See, e.g.*, *Solferini*, 2021 WL 5415293, at *4 (finding range from $475.00 to $650.00 per hour to be a reasonable rate); *see also Jackson v. Mistry Hosp. LLC*, No. 1:19-CV-00422, 2021 WL 1392869, at *2 (E.D. Tex. April 12, 2021) (finding $595 to be reasonable and noting that other courts in the Fifth Circuit have allowed similar rates).

Therefore, Crane's requested rates are reasonable.  The Court now turns to the second step in the lodestar analysis, hours reasonably expended by counsel.

### ii.    Hours Expended

The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended by presenting adequately recorded time records as evidence.  *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).  The Court should include only those hours reasonably expended, and exclude any time that is excessive, duplicative, unnecessary, or inadequately documented.  *Id.*

11

Crane seeks compensation for 1,225.9 hours billed, with Dunn billing 24.1 hours, Iacuone billing 210.8 hours, Collins billing 8.3 hours, Shaw billing 191.5 hours, McAllister billing 227.6 hours, Myers billing 9.7 hours, Richardson billing 25.4 hours, McComber billing 9.4 hours, and Gross billing 23.4 hours (Dkt. #117, Exhibit 1-A).  Crane also seeks compensation for 15 hours, at the blended hourly rate, for preparation of its motion for fees.  It should be noted the Rogge Dunn Group spent a total of 1624.8 hours working on this case and applied a roughly 25% reduction, eliminating 398.9 hours of work from the request for fees (Dkt. #117, Exhibit 1-A).

Rave argues Crane failed to use proper billing judgment and the number of hours requested should be reduced because: (1) fees for routine clerical work are not allowed; (2) fees for duplicative work performed by counsel are not allowed; (3) block billing is not allowed; (4) Crane's submission contains vague billing entries; and (5) time was spent advancing unrecoverable claims (Dkt. #117 at pp. 8–12).  The Court will address each argument in turn.

That said, the Court starts by noting Crane's counsel have, overall, demonstrated sound billing judgment.  "Billing judgment requires documentation of the hours charged and the hours written off as unproductive, excessive, or redundant."  *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).  Crane submitted extensive billing records with notations regarding hours excluded from the request for attorneys' fees.  Therefore, the Court will not reduce the lodestar on the general basis of lack of billing judgment.  However, the Court will address Rave's specific points.

### 1.  Reducing Recoverable Hours for Billing for Clerical Work

Rave argues Crane's recoverable hours should be reduced because they include clerical work (Dkt. #126 at p. 8).  "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."  *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

Paralegal fees can be recovered "only to the extent that the paralegal performs work traditionally done by an attorney." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982). Likewise, when an attorney performs clerical work it is not recoverable at an attorney's rate. *See Johnson*, 488 F.2d at 717.

Rave identifies 120 hours of billed time that it argues should be discounted from the recoverable billable hours by Crane (Dkt. #126 at p. 9). Examples of the alleged clerical work include: (1) creating a dropbox folder, uploading documents to the folder, and generating a link for client review; (2) updating calendar entries with new deadlines; (3) communications with vendor and uploading files for sets of trial binders (Dkt. #126, Exhibit A). While the Court agrees these examples constitute unrecoverable clerical work, Crane aptly notes counsel already applied a total reduction of 398 hours (Dkt. #131 ¶ 12), which more than accounts for clerical tasks reflected in the billing records. Additionally, having reviewed the records, the Court does not agree with Rave's assessment that the attorneys and paralegals expended 120 hours on clerical work in this case. Thus, the Court will not apply a reduction on this basis.

### 2. Reducing Recoverable Hours for Duplicative Billing

Rave argues the Court should reduce Crane's recoverable hours by 24.2 hours for duplicative billing (Dkt. #126 at p. 10). Crane again points to the self-imposed 398-hour reduction (Dkt. #131 ¶ 12).

Where more than one attorney works on a case, courts may consider if the work by other attorneys was duplicative or unnecessary. *See Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987). The examples Rave identifies as duplicative or unnecessary seem appropriate to the Court. Additionally, the Court finds Crane's 25% reduction—which, at the $500 blended rate, amounts to an almost $200,000 reduction—compensates for Rave's issues with the invoices.

### 3.   Reducing Recoverable Hours for Inadequately Documented Time

Rave argues the billing entries are inadequate because Crane's counsel utilized block-billing, and because some of the entries are vague (Dkt. #126 at pp. 10–12).  Crane argues the entries do not constitute block-billing (Dkt. #131 at p. 4).  Having reviewed the record, the Court disagrees.

As an initial matter, the Court notes "[t]here is not a federal or local rule that requires any particular billing increments to be used when seeking an attorney's fee award," thus block-billing is not prohibited in Texas.  *Lewallen v. City of Beaumont*, 2009 WL 2175637, at *10, *aff'd in part*, 394 Fed. Appx. 38, 2010 WL 3303756, at *7 (5th Cir. 2010) (affirming the district court's award of costs and fees but reversing and rendering on other grounds).  Furthermore, Rave concedes the majority of the entries are not block-billed (Dkt. #126 at p. 10).  Nevertheless, Rave seeks a 30% reduction of Crane's recoverable hours (Dkt. #126 at p. 11).

"'Block-billing' is a 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"  *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004), *amended in part*, No. 3:00-CV-1543-L, 2004 WL 2189634 (N.D. Tex. Aug. 26, 2004).

Having reviewed the invoices, the Court finds Crane's counsel utilized the block-billing format for some of its entries.  However, the use of block-billing does not warrant reducing Crane's fee award, because the time entries contain enough information for the court to determine the reasonableness of the hours spent.  *See Equistar Chems., L.P. v. Indeck Power Equip. Co.*, No. H-19-3757, 2021 WL 2270212, at *15–16 (S.D. Tex. June 3, 2021); *United States ex rel McNeil v. Jolly*, 451 F. Supp. 3d 657, 673 n.45 (E.D. La. 2020) ("[T]he Court will not reduce [a party's] hours for block billing because the entries contain sufficient information for the Court to determine

that the hours were reasonably expended."); *RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc.*, 429 F. Supp. 3d 238, 244 (E.D. La. 2019) ("While the firm did employ block billing to a limited degree, those fee entries do not raise concerns about the reasonableness of either the nature or duration of the services rendered, but instead reflect an appropriate billing judgment.").  Crane's entries are detailed enough that the Court may determine whether the hours expended were reasonable.[6]  This brings the Court to Rave's argument regarding vagueness.

Rave requests a reduction of 43.4 hours for vague billing entries (Dkt. #126 at p. 12). Having reviewed the record, the Court agrees some of the entries are vague.

In a request for attorneys' fees, if the supporting documentation is too vague to permit meaningful review then courts may properly reduce or eliminate hours.  *La. Power & Light*, 50 F.3d at 326.  The Fifth Circuit has identified billing entries such as "work on brief," "continue to work on brief," and "review for oral argument" as vague.  *See Leroy v. City of Houston*, 906 F.2d 1068, 1080 (5th Cir. 1990).  Additionally, the Fifth Circuit has affirmed entries like "review file," "preparation of correspondence," "review correspondence," "phone conference with co-counsel," "legal research," and "review email" were too vague to support an award of attorneys' fees. *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-913, 2005 WL 6789456, at *11 (N.D. Tex. Dec. 20, 2005), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).  While the Court identified roughly forty entries that would be classified as vague in this circuit—examples include "Meet with Iacuone," "email with client," and involve conversations about "next steps" or a "game plan" (Dkt. #117, Exhibit 1-B).  However, only one of the vague entries exceeds an hour of work

---

[6] For example, Rave identifies an entry from December 12, 2019 for 2.2 hours as a block-billed entry for which Crane should not recover (Dkt. #126, Exhibit 1).  Brian Shaw states the following tasks comprised the 2.2 hours: (1) continue review and revisions to complaint; (2) email to Iacuone regarding pleading strategy; (3) eight emails with client; (4) telephone call to client; (5) research issues on domicile; and (6) revise complaint.  It is reasonable those tasks would take 2.2 hours total.

(Dkt. #117, Exhibit 1-B).  Further, the vast majority of the vague entries have been notated as having a discount applied (Dkt. #117, Exhibit 1-B).  Therefore, the Court finds Crane's own reduction is sufficient to remedy the issue of certain entries lacking the necessary specificity.  Thus, the Court need not impose a further reduction on the hours Crane's counsel expended.

### 4.   Reducing Recoverable Hours for Unsuccessful Work

Crane originally asserted a breach of contract claim for his bonus payment, unpaid vacation, severance payment, COBRA premiums, and 300,000 RSUs, along with claims for statutory fraud, fraudulent inducement, and declaratory judgment.  However, the only claims that remained to be resolved by the factfinder at trial were the breach of contract claim with respect to the RSUs and the fraudulent inducement claim.  Of the two remaining claims, Crane only prevailed on the breach of contract claim.  Thus, Rave argues Crane was obligated to segregate his request for attorneys' fees between work performed for recoverable and non-recoverable claims (Dkt. #126 at p. 12).   Rave requests the Court exclude 46.2 hours of work performed pursuing unsuccessful claims wherein Crane failed to segregate the request (Dkt #126 at p. 13).  Crane again relies on its prior reduction in support of denying Rave's request.

Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998) (quoting *Hensley*, 461 U.S. at 436).  Thus, because Crane experienced only a partial success in prosecuting his claims, the quantity of hours expended on this case may be excessive.

Moreover, "[a] party seeking attorneys' fees is 'required to segregate fees between claims for which they are recoverable and claims for which they are not.'"  *Domain Prot., LLC v. Sea*

16

*Wasp, LLC*, No. 4:18-CV-792, 2020 WL 4583464, at *7 (E.D. Tex. Aug. 10, 2020) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)). However, there is an exception to the duty to segregate when the fees are inextricably intertwined. *Tony Gullo Motors*, 212 S.W.3d at 313–14. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.*

Crane's counsel failed to provide the Court with any notice of segregation of their billing. However, it goes without saying that there was "significant overlap between the elements and facts of [many of the] claims." *Tech Pharm. Servs.*, *LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 904 (E.D. Tex. 2017). Moreover, Crane submits fees for services like drafting the complaint and amended complaint, researching and drafting a response to Rave's motion for summary judgment, and communicating with the client and opposing parties. These services would be necessary whether the breach of contract claim was filed alone or with other and "they are not disallowed simply because they do double service." *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210, 217 (5th Cir. 2020), *as revised* (Sept. 17, 2020) (quoting *Tony Gullo*, 212 S.W.3d 299 at 313). No further segregation is necessary, or practical. *United My Funds v. Perera*, No. 4:19-cv-373, 2020 WL 10708754, at *4 (E.D. Tex. Dec. 18, 2020). Finally, the Court is persuaded Crane's self-imposed reduction compensates for any lack of segregation. The Court therefore declines reduces the lodestar by 46.2 hours.

Therefore, the lodestar amount is $818,144.75.

### iii.   *Johnson* Factors

After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant *Johnson* factors not already included in the lodestar. *Shipes v.*

*Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).  The Court must be careful when applying the *Johnson* factors to make sure "not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Id.*  "Four of the *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation—are presumably fully reflected in the lodestar amount." *Id.*  If a factor is presumably considered in the lodestar amount, the Court may still make an adjustment based on that factor; however, only "in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings." *Id.*

Here, Rave does not argue that any of the *Johnson* factors require that the lodestar award should be adjusted downward.  Still, the Court has considered them on its own and the *Johnson* factors are presumably reflected in the lodestar amount.  There are no exceptional circumstances permitting the Court to adjust the amount.  Consequently, the Court does not reduce the award based on the *Johnson* factors.  Crane is therefore entitled to $818,144.75 in attorneys' fees expended during the course of litigating this case.

### C.  Pre- and Post-Judgment Interest

Crane seeks pre-judgment interest in the amount of $109,208.90 (Dkt. #117 ¶ 44).  Crane arrived at this figure by applying an interest rate of 6%[7] to the principal amount of $924,000 and utilizing an accrual date of November 14, 2019.  Rave contends Crane waived his claim for pre-judgment interest because the jury's award of damages did not delineate between past and future damages (Dkt. #126 at p. 14).  Thus, "[t]o the extent Plaintiff requests pre-judgment interest on future damages, this Court should deny this request" (Dkt. #126 at p. 14).  Otherwise, Rave takes no issue with Crane's calculation of pre-judgment interest.

---

[7] *See* TEX. FIN. CODE § 302.002.

Crane did not waive his claim for pre-judgment interest.  Rave relies on *Brister v. AWI, Inc.*, 946 F.2d 350, 362 (5th Cir. 1991).  However, *Brister* was an admiralty case that involved a plaintiff who sued his employer for injuries suffered when he slipped and fell during the course of his employment as a member of a drill rigging crew.  *Id.* at 353.  Rules specific to maritime and admiralty law limited the plaintiff's recovery of prejudgment interest.  *Id.* at 362.  Thus, the Court is not persuaded by Rave's argument.

"State law governs the award of prejudgment interest in diversity cases."  *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994) (citations omitted).  "In the absence of a statutory right to prejudgment interest, Texas law allows for an award of equitable prejudgment interest under *Cavnar v. Quality Control Parking, Inc*., 696 S.W.2d 549 (Tex. 1985)."  *Bituminous Cas. Corp. v. Vacuum Tanks, Inc*., 75 F.3d 1048, 1057 (5th Cir. 1996).  Under this standard, "an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances."  *Id*.  Crane is the prevailing plaintiff here and there are no exceptional circumstances that warrant a denial of pre-judgment interest.

Having found no waiver and given Rave does not dispute the reasonableness of Crane's requested figure, the Court will award pre-judgment interest computed at the rate of 6% on the breach of contract damages awarded.  Accordingly, Crane is entitled to $109,208.90 as pre-judgment interest.

Crane also requests post-judgment interest on the total award under the applicable federal rate proscribed in 28 U.S.C. § 1961 from the date judgment is entered until it is paid in full (Dkt. #117 ¶ 45).  Rave does not contest Crane's request (Dkt. #126).  The Court finds Crane is entitled to post-judgment interest.

### D.  Appellate fees

On November 4, 2021, Rave filed its Form 10-Q with the Securities and Exchange Commission wherein it stated its intent "to appeal the judgment to the Fifth Circuit Court of Appeals" (Dkt. #117, Exhibit 3).  Based on Rave's statement, Crane requests the Court award any attorneys' fees that may be incurred on appeal (Dkt. #117 ¶ 47).  Rave asserts the Court should deny the request because it is too speculative (Dkt. #126 at p. 15).  It is currently impossible for the Court to predict the number of hours required for Crane's counsel to defend the appeal and is entirely speculative.  Crane's own failure to state an estimate of the amount of appellate fees underscores this point.  Therefore, the Court will address this issue of appellate attorneys' fees following the resolution of an appeal.  *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F. 3d 423, 433 (5th Cir. 2003).  Crane's request for conditional appellate fees is therefore denied without prejudice.

### II.    Bill of Costs

Crane seeks $38,900.76 in costs (Dkt. #118, Exhibit A).  Rave contends Crane seeks costs for tasks that fall outside the appropriate statutory categories and are therefore unrecoverable (Dkt. #125).  Additionally, Rave asserts Crane seeks an excessive and unreasonable amount of costs (Dkt. #125).

Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(1).

The Court may tax the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2018).

The Fifth Circuit has explained that "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)).  The denial of costs is considered "in the nature of a penalty," so the Court "may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so." *Schwarz*, 767 F.2d at 131.  "The burden is on the party seeking an award of costs to show entitlement to an award." *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB-RSP, 2015 WL 164072, at *1 (E.D. Tex. Jan. 13, 2015).

The Court has discretion to deny costs when the "suit was brought in good faith *and* denial is based on at least one of the following factors: '(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.'" *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794); *see also* 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2668, at 234 (4th ed. 1998).

Turning to the facts of this case, the Court will exercise its discretion to deny certain, but not all, costs to Crane.

**A. Miscellaneous Deposition Costs**

Rave asserts incidental costs associated with depositions and the extra cost of obtaining a transcript on an expedited basis are not taxable costs (Dkt. #125 at p. 3).  Crane responds that Rave's own discovery abuses necessitated expediting the deposition transcript of Rave's primary witness, Mark Schwarz, where the deposition could not be taken until a little over a month before trial (Dkt. #133 at pp. 1–2).  Additionally, Crane notes Rave filed a motion for summary judgment the day after Scott Crane was deposed, thus necessitating the request for an expedited deposition transcript (Dkt. #133 at p. 2).  Finally, Crane asserts the costs of deposition transcripts' certification was necessary because Rave was likely to object to any transcript that was not certified (Dkt. #133 at p. 2).

In the Fifth Circuit, "prevailing parties are entitled to recover the costs of original depositions and copies under 28 U.S.C. § 1920(2) and § 1920(4), respectively, provided they were necessarily obtained for use in the case."  *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991) (internal quotations omitted).  "[A] deposition need not be introduced into evidence at trial in order to be necessarily obtained for use in the case."  *Id.*  Costs associated with the deposition or copies thereof are taxable "[i]f, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery."  *Id.*  "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court," and the district court has "great latitude" in making this determination.  *Id.* at 285–86.

The Court is satisfied with Crane's explanations for the costs associated with expediting the deposition transcripts of Schwarz and Crane.  Thus, the Court will assess the expedited delivery charges for those depositions against Rave.  The Court will also assess the costs of certifying the

deposition transcripts of Andrea Allen, Bob Bafundo, Robert Page, and Mark Schwarz.  The costs related to these depositions were part of the production of the original deposition transcripts for the aforementioned witnesses —the cost of which Crane is entitled to—are properly taxable to Rave as costs.

## B.  Vague Printing Costs

Rave asserts Crane's descriptions of certain printing costs are too vague for Crane to recover such costs (Dkt. #125 at p. 4).  Crane counters the descriptions are sufficient (Dkt. #133 at p. 3).

Having reviewed the record, the invoices from Crane's printing vendor reflect descriptions such as "binders," "pressboards," and "8.5 x 11 prints" (Dkt. #118, Exhibit C).  While not the most specific descriptions on their face, the first invoice is dated October 20, 2021 and the last invoice is dated October 27, 2021 (Dkt. #118, Exhibit E).  This case proceeded to trial on October 25, 2021.  Consequently, these printing costs appear to be for trial binders, exhibit binders, and witness binders.  The Fifth Circuit has indicated that "[the losing party] should be taxed for the cost of . . . exhibits for use in the case."  *Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 793 (N.D. Tex. 2014) (quoting *Fogleman*, 920 F.2d at 286).  Accordingly, the Court declines to deduct any of the $1,930.70 in costs associated with printing exhibits and the like for trial from the total amount of costs Crane seeks.

## C.  Excessive Trial Technical Consultant Costs

Crane retained a technical assistant consultant, CVFaulk, Inc. ("CVF").  Crane requests $5,437.37 in costs for CVF's work performed prior to trial, $10,000.00 in costs for work performed during trial, and $446.94 for post-trial work (Dkt. #118, Exhibit E).  CVF's services were used to play deposition video in opening statement, display and enlarge exhibits during testimony, play

impeachment videos, and present exhibits during closing argument (Dkt. #133 at p. 3). Rave asserts (1) the trial consultant's fees are not recoverable under Section 1920; (2) the trial consultant's shipping costs are not recoverable; and (3) the trial consultant's costs for meals are not recoverable (Dkt. #125 at pp. 5–8).

In his reply, Crane withdraws his requests for costs associated with the consultant's shipping and meals (Dkt. #133 at p. 4). Thus, the Court will not assess $46.94 in shipping costs[8] and $47.37 for "Fruits, nuts, snacks, and beverages" against Rave. The Court now turns to whether Crane may recover the remaining costs associated with CVF's work.

Crane asserts the work performed is recoverable and relies on *Contogouris v. WestPac Res., LLC*, No. 10-4609, 2012 WL 13001308 (E.D. La. Oct. 15, 2012) (Dkt. #133 at pp. 3–4). In *Contogouris*, the defendant hired a third party for the presentation of exhibits and evidence. *Id.* at *1. The court determined the defendant's hiring of the third party was reasonable because it facilitated the presentation of evidence and saved the expense of supplying eight benchbooks of exhibits for each juror during the use of trial, which would have cost $40,182.96. The Court finds *Contogouris* persuasive. Likewise, courts in the Eastern District of Texas have proven amenable to awarding costs for trial technicians. *See e.g.*, *Innovation Scis., LLC v. Amazon.com, Inc.*, No. 4:18-cv-474, 2021 WL 2075676, at *4 (E.D. Tex. May 24, 2021) (awarding prevailing party $76,137.08 in costs for trial graphics); *SynQor Inc. v. Artesyn Techs. Inc.*, No. 2:07-497, 2011 WL 4591893, at *3 (E.D. Tex. Sept. 30, 2011) (awarding $55,610.44 for audio and video professional services used by the prevailing party); *Versata Software Inc. v. SAP Am. Inc.*, No. 2:07-153, 2011 WL 4436283, at *2 (E.D. Tex. Sept. 23, 2011) (awarding $90,090 for audio and video professional services used by the prevailing party); *Finisar Corp. v. DirecTV Grp., Inc.*, No. 1:05-264, 2006

---

[8] The amount of costs for CVF's post-trial work includes these shipping costs (Dkt. #118, Exhibit E). Thus, Crane requests $400 for CVF's post-trial work.

WL 2699732, at *2 (E.D. Tex. Aug. 4, 2006) (awarding $18,225.00 for a trial technician and finding that audio and visual technology used at trial necessary and reasonable).  Thus, the Court may award costs associated with CVF's services.

However, Rave argues costs related to CVF's work are not recoverable because Crane did not receive pre-trial approval of its trial graphics presentation (Dkt. #125 at p. 7).  The Fifth Circuit has held that a party must obtain pretrial authorization for trial exhibits to recover those costs. *Kellstrom*, 50 F.3d at 335.  Many trial courts in the Fifth Circuit have continued requiring a party to obtain pretrial approval to later recover costs for producing trial exhibits and demonstratives. *See, e.g., Fast Memory Erase, LLC v. Spansion, Inc.*, No. 3:10-cv-0481-M-BD, 2010 WL 5093945, at *6 (N.D. Tex. Nov. 10, 2010) ("In the Fifth Circuit, expenses for the production of various types of non-testimonial evidence—such as photographs, maps, charts, graphs, and other demonstrative aids—are taxable as costs provided the prevailing party obtained court approval before incurring the expense."); *Taylor v. Seton Healthcare*, No. A-10-cv-650 AWA, 2012 WL 2396876, at *4 (W.D. Tex. June 22, 2012) ("[Defendant] did not seek pretrial approval of these exhibits. Accordingly, the Court finds these costs should not be taxed.").

Nevertheless, where the use of technology during trial "is an anticipated, useful, and necessary tool to assist in the efficient presentation of cases," courts may award costs of audio and visual professional service fees. *SynQor*, 2011 WL 4591893, at *3 (awarding the prevailing party 75% of the trial audio and visual professional services fees, without explicit pretrial approval from the court, where the court found that use of technology during trial "is an anticipated, useful, and necessary tool to assist in the efficient presentation of cases").  Here, CVF's services were anticipated, useful, and necessary.  Schwarz, a primary witness for both sides, failed to appear at several depositions, and once he appeared, was evasive in his responses.  His behavior forced the

parties to utilize the Court's discovery hotline a number of times.  At trial, Schwarz was impeached using video clips from his deposition north of twenty times.  It could be anticipated Schwarz would be impeached at trial, and the video clips were an extremely useful tool for executing the impeachment before the jury.  Additionally, this case involved a series of contracts which required the parties to highlight and examine the meaning of specific provisions with a larger document before the jury, clearly a necessary and anticipated task given the breach of contract claims for the RSUs was one of two claims left for the jury's decision at the time of trial.  Email and other written communications also played a pivotal role at trial, the enlargement of which was certainly helpful to the jury.  The Court is therefore satisfied CVF's services were, for the most part, necessary to litigate the case.

That being said, CVF charged its daily rate of $2,000 on October 29, 2021.  However, counsel made their closing arguments to the jury and deliberations commenced the day before.  The jury continued its deliberations and returned its verdict on October 29, 2021.  Thus, CVF's services were not anticipated, useful, or necessary on that date.  Similarly, CVF's post-trial administerial work, for which CVF charged $400.00, does not appear to the Court to be anticipated, useful, or necessary for the presentation of the case to the jury.  The Court will therefore deduct $2,400 from Crane's request for CVF's charges.

Accordingly, Crane is entitled to $36,406.45 total in costs.

## CONCLUSION

It is therefore **ORDERED** Plaintiff Scott Crane's Motion for Attorneys' Fees (Dkt. #117) is **GRANTED**.

It is further **ORDERED** the Request to Enter Plaintiff's Bill of Costs (Dkt. #118) is **GRANTED in part**.

It is further **ORDERED** that:

1. Crane be awarded attorneys' fees in the amount of $818,144.75;

2. Crane be awarded pre-judgment interest in the amount of $109,208.90;

3. Post-judgment interest on all sums awarded herein at the statutory rate from the date of entry of this Order until paid; and

4. Costs of court in the amount of $36,406.45.

**IT IS SO ORDERED.**

**SIGNED this 9th day of February, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE